UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUISE WOODARD o/b/o MLW,           )
a minor,                            )
                                    )
                Plaintiff,          )        Case No. 1:14-cv-1050
                                    )
v.                                  )        Honorable Paul L. Maloney
                                    )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )        __REPORT AND RECOMMENDATION__
                Defendant.          )
_____)

        This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff

was not entitled to child's supplemental security income (SSI) benefits.    On August

23, 2011, Louise Woodard filed an application for SSI benefits on behalf of her

grandson, MLW, a minor.[1]  (PageID.174-80).   Plaintiff claimed a December 2003

onset of disability corresponding to his date of birth.[2]   (PageID.174).   His claim

was denied on initial review.   (PageID.94-101).   On April 23, 2013, plaintiff

received a hearing before an administrative law judge (ALJ), where he was

represented by an attorney.   (PageID.50-91).

---

1 Ms. Woodard is also MLW's legal guardian.   (PageID.52-53, 56, 172).

2 SSI benefits are not awarded retroactively for months prior to the application for
benefits.   20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d
Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir.
2004).   The earliest month in which SSI benefits are payable is the month after the
application for SSI benefits is filed.   Thus, September 2011 is plaintiff's earliest
possible entitlement to SSI benefits.

On May 9, 2013, the ALJ issued a decision finding that plaintiff was not disabled.   (PageID.29-41).   On August 26, 2014, the Appeals Council denied review (PageID.20-22), and the ALJ's decision became the Commissioner's final decision.

On October 7, 2014, plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits.   Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1.   The ALJ's findings that plaintiff had less than marked limitations in the domains of completing tasks, interacting and relating with others, and caring for himself are not supported by substantial evidence.

2.   The ALJ erred by not giving controlling weight to the opinions of Elizabeth Mettler, M.D., and by not considering the factors set forth in 20 C.F.R. § 416.927(d) in evaluating the weight to be given to her opinions.

(Plf. Brief at 7, ECF No. 11, PageID.401).   I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.   *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).   Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir.

2007).   The scope of the Court's review is limited.   *Buxton*, 246 F.3d at 772.   The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.   *See   Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).   "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."   42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.   . . .   This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."   *Buxton*, 246 F.3d at 772-73.   "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."   *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").   "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."   *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Standard for Finding Disability on a Child's Claim for SSI Benefits

Under the Work Opportunity Act's standard,[3] a child seeking SSI benefits can establish disability only by showing that he suffers from a medically determinable physical or mental impairment that results in marked and severe functional limitations and lasts for a period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). "The thrust of the legislation was most certainly to tighten eligibility." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 83 (2d Cir. 2003). Under the current three-step analysis, the Commissioner must ask: (1) is the claimant engaged in substantial gainful activity?; (2) are the impairments severe?; and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational requirements? *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; *see also Barnett ex rel. D.B. v. Commissioner*, 573 F. App'x 461, 462-63 (6th Cir. 2014); 20 C.F.R. § 416.924(a). As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits. *See Encarnacion*, 331 F.3d at 84; *see also Smith v. Commissioner*, 564 F. App'x 758, 762 (6th Cir. 2014); 20 C.F.R. § 416.924(d)(2).

By regulation, the ALJ utilizes six domains of functioning to assist him in determining whether the combination of a minor's impairments equal the severity of a listed impairment: (1) acquiring and using information; (2) attending and

---

3 Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the claimant's ability to care for himself; and (6) the claimant's health and physical well-being.   20 C.F.R. § 416.926a(b)(1). Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity. 20 C.F.R. § 416.926a(d); *see Kelly v. Commissioner*, 314 F. App'x 827, 832 (6th Cir. 2009); *Encarnacion*, 331 F.3d at 85.

A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(2)(i).   "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'   It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."   *Id.*; *see Kelly*, 314 F. App'x at 832. An "extreme" limitation is more than a "marked" limitation.   An "extreme" limitation is the rating given to the "worst limitations."   20 C.F.R. § 416.926a(e)(3)(i).

An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."   *Id*.   "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832.

### Discussion

Plaintiff was born in December 2003.   He was 9 years old as of the date of the ALJ's decision.   He was a school-age child on the date the application for SSI benefits was filed and on the date of the ALJ's decision.   (Op. at 4, PageID.32).  Plaintiff has never engaged in substantial gainful activity.   (*Id.*).   The ALJ found that plaintiff had the following severe impairments:   "asthma; attention deficit hyperactivity disorder (ADHD); obsessive-compulsive disorder (OCD); and oppositional defiant disorder (ODD)."   (*Id.*).   Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of any listed impairment.   (*Id.* at 6, PageID.34).   The ALJ found that plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being.   Plaintiff had no limitation in moving about and manipulating objects.   (*Id.* at 8-13, PageID.36-41).   Because plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of a listed impairment, the ALJ held that plaintiff was not disabled.  (*Id.* at 13, PageID.41).

### 1.

Plaintiff argues that the ALJ's administrative findings that plaintiff had less than marked limitations in the following domains of functioning were not supported by substantial evidence:   attending and completing tasks, interacting and relating

with others, and caring for himself.    (Plf. Brief at 9-11, PageID.403-05; Reply Brief at 1-2, PageID.448-49).

Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*).  "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009).   It is well established that a claimant must show that he satisfies all the individual requirements of a listing.  *See Elam*, 348 F.3d at 125.  "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013).  "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125; *see Barnett*, 573 F. App'x 463.

It was plaintiff's burden to present evidence establishing that he was disabled.  *See   Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008).   Further, it was plaintiff's burden to demonstrate that his impairments met or equaled the requirements of a listed impairment.   Whether an impairment equals a listed impairment is an administrative issue reserved to the Commissioner, not a medical determination. *See Zaph v. Commissioner*, No. 97–3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's

impairment is equivalent to a listed impairment is an administrative finding and not a medical one.").

Plaintiff presented very little evidence in support of his claim. [4] His grandmother and guardian filed the application for SSI benefits on August 23, 2011. (PageID.174). On July 11, 2011, plaintiff was examined by Samuel Grossman, M.D. Dr. Grossman noted plaintiff's history of a diagnosis of ADHD and that plaintiff would be in second grade in the upcoming school year. Plaintiff's physical examination was normal. Dr. Grossman noted that MLW's current medications were "working well, progress in school [was] satisfactory, behavior [was] satisfactory, appetite [was] good, slep[t] well, [and he was] not currently experiencing any adverse reactions." (PageID.334). Dr. Grossman renewed plaintiff's prescriptions for Vyvanse and Risperdal and instructed him to return in six months. (*Id.*).

On July 19, 2011, Prathima Chaloori, M.D., conducted a physical examination. He found that plaintiff did not have any physical defects or illness that would warrant restricting his physical activities. (PageID.320-21).

On October 4, 2011, plaintiff reported to Elizabeth Mettler, M.D., that he had experienced pain with urination for two days. She described him as a well

---

4 Much of the evidence filed in this case falls outside the relevant time period, which ran from August 23, 2011, the date of plaintiff's application for SSI benefits was filed, through May 9, 2013, the date of the ALJ's decision. (PageID.283-315, 323-54, 369-72). Evidence from outside the relevant time period is minimally probative and is considered only to the extent that it illuminates the claimant's condition during the relevant period. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002).

developed, well nourished individual in no acute distress.   Plaintiff received a prescription for an antibiotic.   (PageID.330-31).

On November 7, 2011, plaintiff complained of fever, cough and sore throat. He was diagnosed with a viral illness and directed to stay home from school the next day.   (PageID.365-68).

On December 21, 2011, plaintiff received a mental status examination performed by Psychologist Timothy Strang.   Plaintiff was eight years old.   He had been living with his grandmother since January 2009.   He was in second grade and had been receiving special education support since December 2011.   Plaintiff's psychiatric history consisted of being seen by a treating pediatrician, Dr. Grossman. Plaintiff's medications consisted of Vyvanse and Risperdal.   He also had an asthma inhaler in case he had an asthma flare-up.   Plaintiff had previously been diagnosed with ADHD, but he was also argumentative, needing things his own way. Psychologist Strang found that MLW was oriented to time, person, and place.   His speech was clear and understandable.   He was able to stay in his chair and perform simple calculations.   His affect was appropriate and his mood was stable. Psychologist Strang offered a diagnosis of ADHD and Oppositional Defiant Disorder. Plaintiff had stressors related to his behavioral issues at school.   (PageID.359-62).

On January 5, 2012, Dr. Mettler, a treating pediatrician, found that plaintiff's medications were working well.   He was making satisfactory progress in school. His behavior was satisfactory.   He was not experiencing any adverse reactions to medications.   He was instructed to return in 6 months.   (PageID.378-79).

On January 11 and 13, 2012, Psychologist William Schirado and Pediatrician Shanthini Daniel, M.D., reviewed plaintiff's records and offered their opinion that plaintiff had no limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for himself, and less than marked limitation in health and physical wellbeing.   (PageID.97-99).

On July 9, 2012, plaintiff returned to Dr. Mettler.   She noted that plaintiff's medications were working well.   His school progress was satisfactory.   His behavior was satisfactory.   He was not experiencing any adverse reactions.   OCD behaviors had been prominent at the end of the school year, but had improved over the summer.   Plaintiff's neurological examination was normal and he was alert and oriented.   Plaintiff received prescriptions for Risperdal, Vyvanse, and Albuterol and was instructed to return in 6 months.   (Page ID 377).   There are no progress notes from Dr. Mettler dated after July 9, 2012.

On October 25, 2012, plaintiff was seen by Nurse Practitioner Michelle Mellinger.   MLW complained of a cough and fever.   His respiratory function was normal and his lungs were clear to auscultation.   He was diagnosed with sinusitis and acute pharyngitis and provided with a prescription for amoxicillin. (PageID.374-75).

Plaintiff was in third grade in the fall of 2012.   (PageID.240).   His special education teacher, Barbara Remaley, signed a teacher questionnaire indicating that

plaintiff was in third grade, but she left blank the portion of the form where she should have provided the date.   (PageID.232, 239).   Ms. Remaley indicated that plaintiff was performing below grade level in two areas, math and written language. He was above third grade level in reading.   (PageID.232).   With regard to attending and completing tasks, out of the thirteen areas rated, MLW's only area where he had a serious problem was in his ability to work without distracting others. He remained in special education classes for most of the core curriculum and continued to need the special education support and encouragement to stay on task. (PageID.234).   Again in the thirteen areas rated for interacting and relating to others, only one area was identified as a serious problem:   "making and keeping friends."   Plaintiff continued to need support in processing anxiety producing experiences.   (PageID.235).   Finally, out of the ten areas rated in the caring for himself domain, the only serious problem indicated was for "handling frustration appropriately."   (PageID.327).

The record includes "daily point sheets" generated at school in September and October 2012.   Plaintiff's scores were generally in the 50s, but ranged as low as 39 and as high as high as 62.   (PageID.245-53).

On November 16, 2012, plaintiff's individualized education plan (IEP) from school noted that he had the ability to assess a situation and respond appropriately and correctly.   He was capable of doing grade level academic work in all areas.   He was described as intelligent, determined, and decisive. (PageID.240).   He was also described as an opinionated child who seeks adult acceptance and support.   He likes

to have his views known and respected.   He needs guidance in his understanding of when to express himself in order to build and maintain healthy social relationships. He required counseling support in the processing of anxiety producing experiences. (PageID.242).   Under this IEP, plaintiff continued to receive school social work and elementary emotional impairment support.   (PageID.243).

On November 19, 2012, Dr. Mettler signed a questionnaire.   (PageID.380-85). She offered her opinion that plaintiff had a less than marked limitation in acquiring and using information, no limitation in moving about and manipulating objects, and no limitation in health and physical well-being.   In addition, she checked boxes indicating that plaintiff "marked" limitations in three domains, and followed each with a brief notation.   Under the heading for attending and completing tasks she wrote:   "Longstanding, since December 2009, treatment of ADHD.   Needs constant redirection and supervision to ensure safety and completion of routine tasks. School also puts in extra effort to assist in task completion – special ed class.   Four adults to seven students – cannot make it successfully in a regular ed class."   (*Id.* at PageID.382).   The following notation appears under the interacting and relating with others portion of the form:   "Poor social interaction, unable to effectively communicate with adults and peers.   He does better in a controlled environment. Easily agitated by changes in routine and lack of control."   (*Id.*).   Finally, under the caring for yourself heading, Dr. Mettler wrote:   "Child with poor attention. Needs constant redirection and reminders for self-care.   Requires constant supervision due to impulsiveness and OCD behaviors."   (*Id.* at PageID.383).

Plaintiff's administrative hearing was held on April 23, 2013. The ALJ heard testimony from three witnesses: Ms. Woodard, plaintiff, and Ashir Kumar, M.D., a medical expert. Dr. Kumar is a pediatrician. (Page ID 65, 144-46). He reviewed the exhibits in this administrative record and had the opportunity to question and observe plaintiff during the hearing. Dr. Kumar offered his opinion that plaintiff did not meet or equal the requirements of any listed impairment. (PageID.86). He testified that plaintiff had the following limitations in the six domains of functioning: a less than mild limitation in in acquiring and using information, a less than marked limitation in attending and completing tasks, between less than marked and marked in interacting and relating with others, no limitation in moving about and manipulating objects, a less than mild limitation in caring for himself, and a less than mild limitation in health and physical well-being. He cited specific evidence supporting each opinion. (PageID.86-87). He indicated that his opinion that plaintiff had a less than marked limitation in attending and completing tasks was largely based on the teacher evaluations found in Exhibit 10E. (PageID.86, 89-90).

Dr. Kumar testified as follows with regard to the domain of interacting and relating with others: "Interacting and relating with others I think he's somewhere between less than marked and marked. And the reason I'm saying that is because when you look at his – when you look at Exhibit 11E, where they have a daily point sheet, et cetera, his scores are mostly – he's recently had scores between 50's and the 60's. And the maximum score that you can get is 70 which is sort of ideal. But he

does have some issues with the school bus and he does have issues pointing out with the – point out to you in the hearing, you know, kids in the classroom." (PageID.87).   Dr. Kumar indicated that plaintiff had a less than mild limitation in caring for himself.   Plaintiff had some issues with OCD related behaviors, particularly with food and his ability to control himself emotionally.   (PageID.87).

Plaintiff disagrees with the ALJ's administrative findings that he had a less than marked limitation in attending and completing tasks (Op. at 9-10, PageID.37-38), a less than marked limitation in interacting and relating with others (*Id.* at 10, PageID.38), and a less than marked limitation in caring for himself.   (*Id.* at 11-12, PageID.39-40). It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in his favor.   His burden on appeal is much higher. He must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."   *Peterson v. Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014).   "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."   *Jones v. Commissioner*, 336 F.3d at 477; *see Barnett v. Commissioner*, 573 F. App'x 463-64.   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Heston v. Commissioner*, 245 F.3d at 534.   The ALJ's findings with regard to each of the challenged domains[5] is supported by substantial evidence.

### 2.

Plaintiff argues that the ALJ erred by not giving appropriate weight to the opinions that Dr. Mettler expressed in her questionnaire responses and by not considering the factors set forth in 20 C.F.R. § 416.927(d).   (Plf. Brief at 10-15, PageID.405-09; Reply Brief at 2-3, PageID.449-50)   I find no basis for disturbing the Commissioner's decision.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.   20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance.   See 20 C.F.R. §§ 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[6] is attached to treating physician opinions

---

5 Even assuming that plaintiff could somehow establish an error by the ALJ in not finding that plaintiff had a marked limitation in one of the challenged domains, the error would be harmless because plaintiff has not shown that he had a marked limitation in a second domain.   *See Norman ex rel. MDN v. Commissioner*, No. 1:11-cv-903, 2012 WL 5874476, at * 9 (W.D. Mich. Nov. 20, 2012) (collecting cases).

6 "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. § 416.927(d)(3); *see Blankenship v. Commissioner*, 624 F. App'x 419, 429-30 (6th Cir. 2015).

regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.    20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.    *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).    "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.    Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"    *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."    20 C.F.R. § 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met:    (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the

- 16 -

opinion 'is not inconsistent with the other substantial evidence in [the] case record.'").

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy

- 17 -

deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ was not required to give weight to Dr. Mettler's opinions on the administrative issue of whether plaintiff met or equaled the requirements of a listed impairment.   20 C.F.R. § 416.927(d)(2), (3).   In addition, the ALJ "considered the opinion evidence in accordance with 20 C.F.R. 416.927[.]"[7]   (Op. at 6, PageID.34). Under subsection 416.927(c), the ALJ is only required to "consider" the factors.   The regulation does not require a "factor-by-factor" analysis. *See Francis v. Commissioner*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *see also Kostovski–Talevska v. Commissioner*, No. 5:13-cv-655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Commissioner*, No. 1:12-cv-912, 2014 WL 1341923, at * 11 (W.D. Mich. Mar. 31, 2014).

The ALJ considered all the evidence and found that the "marked" restrictions that Dr. Mettler suggested in the domains of attending and completing tasks interacting and relating with others, and in caring for yourself, were not well supported, and were not consistent with Dr. Mettler's progress notes and the record as a whole.   (*See* Op. at 8, Page ID 36).

---

7 Since March 26, 2012, the factors the ALJ is to consider in weighing medical opinions have appeared at subsection 416.927(c) rather than subsection 416.927(d). *See e.g.*, *Flowers v. Commissioner*, No. 13-11457, 2014 WL 4855037, at * 5 n.2 (E.D. Mich. Sept. 30, 2014); *Wurster v. Commissioner*, No. 1:12-cv-1149, 2014 WL 1345403, at * 5 n.2 (W.D. Mich. Mar. 31, 2014); *Rottinghouse v.* Commissioner, No. 1:11-cv-882, 2013 WL 618625, at * 8 n.6 (S.D. Ohio Feb. 19, 2013).   I assume that plaintiff's citations to subsection (d) in his statement of errors and section 2 of his initial brief were intended as citations to subsection (c).

The ALJ gave "good reasons" for the weight that he gave to Dr. Mettler's questionnaire responses.  Her opinions were not well supported by other record evidence, including school records.  Her progress notes for the period at issue (PageID.330-31, 377-79) did not support the level of restriction that she suggested. The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions.  *See e.g., Hill v. Commissioner*, 560 F. App'x 549, 550 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73 (6th Cir. 2012).

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:     February 26, 2016              /s/   Phillip J. Green
                                          United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).